A jury convicted the defendant, Sean R. Somers, of aggravated assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A(c )(i).[2] ,[3] On appeal, he contends that the motion judge erred in denying his motion to suppress several eyewitness identifications, and that the trial judge erred in denying his motion for individual voir dire of prospective jurors for potential bias regarding eyewitness identification testimony and in improperly instructing the jury on both assault by means of a dangerous weapon and reckless assault and battery by means of a dangerous weapon. We affirm.
Discussion. 1. Motion to suppress. The defendant challenges the identifications by two eyewitnesses, Manuel Miranda and Michael Miranda.[4] He asserts that those out-of-court identifications were unnecessarily suggestive and resulted in unfair prejudice to him. We disagree.
Unfair prejudice arises from "suggestive circumstances" surrounding the identification. Commonwealth v. Johnson, 473 Mass. 594, 600 (2016). "The probative value of the identification depends on the strength of its source independent of the suggestive circumstances of the identification." Id. at 601.
In this case, together Manuel and Michael made a total of three out-of-court identifications. The first occurred while Michael was being interviewed at the Wareham police station. In the course of being questioned, Michael saw the defendant walk past the doorway of the room he was in and stated, "That's the punk right there" -- indicating that the defendant was the individual who had stabbed the victim.
That encounter between Michael and the defendant was accidental -- there is no evidence that the police paraded the defendant in front of Michael intentionally. Nor was there any evidence of "highly or especially suggestive circumstances." Id. at 598. According to the evidence from the suppression hearing, Michael and the defendant were two of several individuals from the scene who were at the police station that evening, and, when Michael saw him, the defendant was not restrained.[5] Under these circumstances, we do not conclude that Michael's spontaneous identification of the defendant was the product of "suggestive circumstances." Id. at 600.
In any event, the probative value of the identification "substantially outweigh[ed]" the danger of any unfair prejudice. Ibid. Michael, who was only a few feet away from the defendant when he witnessed the stabbing, was in a good position to identify the stabber. He already had provided the police with a description matching the defendant before he spontaneously identified him, and he made that spontaneous identification a few hours after the incident when the details of the crime would still be fresh in his mind. See id. at 601 (strength of identification depends on "quality of the witness's opportunity to observe the offender at the time of the crime, the amount of time between the crime and the identification, [and] whether the witness's earlier description of the perpetrator matches the defendant").
The defendant next challenges the two photographic (photo) identifications made by Manuel and Michael. A photo identification is only inadmissible "if the defendant proves by a preponderance of the evidence that the identification was 'so unnecessarily suggestive and conducive to irreparable misidentification that its admission would deprive the defendant of his right to due process.' " Id. at 597, quoting from Commonwealth v. Walker, 460 Mass. 590, 599 (2011). The defendant has failed to meet that burden.
Separately, Manuel and Michael were each asked to identify the defendant from a photo array. The defendant takes issue with the failure by the police to follow the protocol for photo identification adopted in Commonwealth v. Silva-Santiago, 453 Mass. 782, 797-799 (2009), which provided that, when conducting a photo identification, police officers should display the photographs sequentially rather than simultaneously. However, the use of simultaneous display does not by itself render an identification inadmissible. Commonwealth v. Thomas, 476 Mass. 451, 464 (2017).
Here, the photo identifications of the defendant were not so suggestive as to preclude their admission. See ibid. The police assembled an array containing eight photographs, when only five photographs would have been sufficient. See Commonwealth v. Allen, 22 Mass. App. Ct. 413, 416-417 (1986). In avoiding the risk of the defendant's photograph standing out from the rest, the police also obscured the right side of the necks of the individuals displayed so that the defendant's tattoos did not show. See Commonwealth v. Melvin, 399 Mass. 201, 207 n.10 (1987) (disapproval of photo arrays that distinguish suspect from others on basis of some physical characteristic). In addition, the officer who created the photo arrays did not also administer the identification procedure. See Thomas, supra at 454 n.2 (double-blind identification procedure preferred). Finally, prior to administering the photo identification procedure, each officer gave the Supreme Judicial Court's suggested written warnings on the limitations of photo arrays. See Silva-Santiago, supra at 797-798. Accordingly, we discern no error.
2. Individual voir dire. We also are not persuaded that the trial judge erred in denying the defendant's motion for individual voir dire of prospective jurors for potential bias regarding eyewitness testimony. "It is in the sound discretion of trial judges to determine on a case-by-case basis whether an individual voir dire is required." Commonwealth v. Pina, 430 Mass. 66, 74 (1999). "We ... reverse a judge's failure to question jurors individually upon request only 'when a "substantial risk" of bias has been shown.' " Ibid., quoting from Commonwealth v. Hunter, 427 Mass. 651, 654 (1998).
While jurors can unconsciously misjudge the value of eyewitness testimony, see Commonwealth v. Gomes, 470 Mass. 352 (2015), the defendant's broadly framed questions would not have alleviated these concerns. Moreover, in this case, the trial judge examined the prospective jurors as outlined in G. L. c. 234, § 28. He also gave the Gomes instruction on eyewitness testimony on two occasions -- once before the first identification witness identified the defendant and, again, during his final charge to the jury. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 379-388 (Appendix). Accordingly, there was no error. See Commonwealth v. Reavis, 465 Mass. 875, 889 (2013) (no individual voir dire necessary where no likelihood of extraneous influences).
3. Instructions on assault by means of a dangerous weapon. The defendant challenges on two grounds the trial judge's instruction on the lesser included offense of assault by means of a dangerous weapon where the Commonwealth proceeded on the theory of attempted battery. He first argues the instruction was not "suggested by a reasonable view of the evidence." Commonwealth v. Nardone, 406 Mass. 123, 132 (1989). We disagree.
To support a conviction of assault by means of a dangerous weapon, the evidence must establish that the defendant had (1) the specific intent (2) to attempt (3) to use physical force against another (4) with a dangerous weapon. See Commonwealth v. Gorassi, 432 Mass. 244, 248-249 (2000) ; Commonwealth v. Aldrich (No. 1), 88 Mass. App. Ct. 113, 118 (2015) ("[A]ttempt crimes have as an element a specific intent to commit all of the elements of the offense"). Here, there was evidence that the defendant was one of two people "waiving [his] knife from left to right" at a group of individuals.[6] He was observed "jabbing" the knife toward the crowd gathered in front of him. The jabbing motion constituted not only a threat of harm, but also an attempted touching. Therefore, because an attempted battery against a group may constitute an assault against each member, see Commonwealth v. Dello Iacono, 20 Mass. App. Ct. 83, 84, 89-90 (1985), and the victim was a member of that group, the defendant's argument fails.
The defendant's contention that the evidence did not establish the victim's location in the group is equally unavailing. The evidence established that the victim was among the individuals gathered when the defendant jabbed his knife at the group, and that he was ultimately stabbed. The jury could reasonably infer from these facts that the victim was among the people up front and close to the defendant during the assault. Therefore, the trial judge did not err in instructing on this lesser included offense.
The defendant next asserts that the trial judge erred in his specific intent instruction as to the element of assault. We again are not persuaded. The trial judge instructed on specific intent three times. The first time he properly defined specific intent, quoting from Commonwealth v. Nickerson, 388 Mass. 246, 253-254 (1983). Even assuming that the trial judge misspoke when defining specific intent the second time that he addressed the jury, he correctly defined specific intent when addressing the jury for a third time. We look to the "interpretation a reasonable juror would place on the judge's words ... rather than scrutinizing bits and pieces removed from their context." Commonwealth v. Allen, 474 Mass. 162, 168 (2016), quoting from Commonwealth v. Harris, 464 Mass. 425, 434 (2013). This third and final instruction to the jury on specific intent, like his first, was proper. Therefore, evaluating the trial judge's instruction as a whole, we are not persuaded that the instruction was erroneous. See Commonwealth v. Johnson, 45 Mass. App. Ct. 473, 476 (1998).
4. Instruction on reckless assault and battery by means of a dangerous weapon. Last, the defendant contends that the trial judge erred by instructing the jury on reckless assault and battery by means of a dangerous weapon because the evidence did not support an instruction on that lesser included offense. Reckless assault and battery occurs when "a wilful, wanton and reckless act ... results in personal injury to another." Commonwealth v. Welch, 16 Mass. App. Ct. 271, 274 (1983). Here, the evidence indicated that the defendant "dagger[ed]" his knife toward a crowd, eventually stabbing the victim in the chest. The jury could have also reasonably viewed this behavior as reckless. See Nardone, 406 Mass. at 132 (instruction on lesser included offense should be given where suggested by reasonable view of evidence). There was no error.
Judgment affirmed.

We note, based on the record before this court, that the lower court docket states that the defendant was convicted of assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A(b).

The Commonwealth filed prior to trial a nolle prosequi for two charges of armed assault with intent to murder; the judge entered a required finding of not guilty on a charge of assault by means of a dangerous weapon and dismissed a charge of assault and battery by means of a dangerous weapon as being merged in the remaining count of aggravated assault and battery by means of a dangerous weapon.

Due to their shared surname, we refer to them individually by their first names.

At the motion hearing, the officer escorting the defendant testified that he had no memory whether the defendant was handcuffed at that time, but that in that type of situation he "[n]ormally" would not use handcuffs. At trial, Michael testified that the defendant was in handcuffs when he saw him in the police station. However, "in reviewing a judge's ruling on a motion to suppress, an appellate court 'may not rely on the facts as developed at trial' even where the testimony differed materially from that given at trial." Commonwealth v. Deramo, 436 Mass. 40, 43 (2002), quoting from Commonwealth v. Grandison, 433 Mass. 135, 137 (2001).

Where, as here, a knife is used in a dangerous manner, it is a dangerous weapon. See Commonwealth v. Marrero, 19 Mass. App. Ct. 921, 922 (1984) (where object not dangerous per se, question is "whether the object, as used by the defendant, is capable of producing serious bodily harm").